[No. 4872.]

THE CENTRAL PACIFIC RAILROAD COMPANY *v.* J. L. HOWARD, Tax Collector of the County of Colusa.

TAXATION OF LAND GRANTED TO RAILROAD COMPANY.—When the act of Congress making a grant of public land to a railroad company to aid in its construction provides that the President shall appoint commissioners,

who shall report when a section of the road is completed, and that the
company shall pay the costs and charges of the commissioners, and that
patents for the land shall not issue until such commissioners have
reported favorably on a section and their costs and charges have been
been paid, the land is not subject to State taxation until such commis-
sioners have been appointed and have reported, and their costs and
charges have been paid by the company.

IDEM.—Such lands are not subject to State taxation until the company has
complied with the conditions on which they were granted, and is en-
titled to a patent therefor.

APPEAL from the District Court, Tenth Judicial District,
County of Colusa.

In June, 1865, a corporation was organized in this State
called the California and Oregon Railroad Company, for
the purpose of constructing a railroad from Marysville to
the boundary between California and Oregon. In Novem-
ber, 1867, another corporation was organized under the
laws of this State for the purpose of building a railroad
from Roseville, on the line of the Central Pacific Railroad
Company, to Marysville. On the 25th day of July, 1866,
Congress passed an act to aid in the construction of a rail-
road from the Central Pacific Railroad in California to
Portland in Oregon, by which it granted to said California
and Oregon Railroad Company and to such company in
Oregon as the Legislature thereof might designate, every
alternate section of land for the distance of twenty miles on
each side of the railroad, the California company to build
the road and have the land to the Oregon line, and the Ore-
gon company to build the road thence to Portland and have
the land in Oregon, with the liberty to each company, if it
reached the boundary line in advance of the other, to continue
the road until it met the other. The act provided that the
President should appoint three commissioners to examine the
road, and that if they found that twenty consecutive miles of
the road had been completed and equipped, that they should
so report; and that thereupon patents should issue for the
land to the extent of the section completed, and so on for
each section of like length. The grant of land was made
with the condition that if the companies failed to comply

with the terms of the act, the act should become null and void, and all the lands not conveyed by patent should revert to the United States. The act is found in Vol. 14 of U. S. Stats. at Large, 239. The California and Oregon Railroad Company, on the 16th day of January, 1868, under the laws of California, consolidated and amalgamated with the Marysville Railroad Company, under the name of the California and Oregon Railroad Company; and about the 22d day of August, 1870, the California and Oregon Railroad Company consolidated with the Central Pacific Railroad Company, under the name of the latter company. By the consolidations, the plaintiff succeeded to all the property and franchises of the other companies, and assumed all the obligations of the same. In the year 1874, between the first Monday in March and the first Monday in July, a large number of alternate sections, in the county of Colusa, on the line of the railroad, and within the limits of the grant, were assessed for State and county taxes, and the tax became delinquent on the first Monday in January, 1875; and the collector of taxes sold them, and they were bid in by the People of the State, under a law allowing such purchase. The United States issued to the plaintiff a patent for the land on the 17th day of March, 1875. The railroad had not been completed when this suit was commenced. The defendant, who was the tax collector, threatened that, at the expiration of six months from the sale, he would make to the purchaser a deed of the land. This action was commenced May 10, 1875, to enjoin the execution of a deed, and the foregoing were the material facts averred in the complaint.

The defendant demurred to the complaint, because it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer, and the plaintiff declining to amend, final judgment was rendered for the defendant. The plaintiff appealed.

*S. W. Sanderson,* for the Appellant.

I. Lands of the United States, or lands in which the United States have an interest, are not subject to taxation.

The-act of Congress of the 9th of September, 1850, section 3, provides: "That the said State of California is admitted into the Union upon the express condition that the people of said State, through their Legislature, or otherwise, shall never interfere with the primary disposal of the public lands within its limits, and shall pass no law and do no act whereby the title of the United States shall be *impaired or questioned;* and they shall never *levy any tax* or assessment of any description whatever, upon the public domain of the United States." (1 Hittell, Art. 242.)

Under this provision, the lands of the United States cannot be taxed until after they have passed wholly and absolutely into private ownership. So long as the United States retains any interest, or reserves any right to control the disposal of the lands, they cannot be interfered with by the State in any manner whatever.

II. The lands in question had not passed into the absolute ownership of the appellant at the time the assessment in question was made.

The eighth section of the act of Congress, by which these lands were granted to the appellants, provides: "That in case the said companies shall fail to comply with the terms and conditions required, namely, by not filing their assent thereto as provided in section six of this act, or by not *completing* the same as provided in said section, this act shall be *null and void,* and all the lands not conveyed by patent to said company or companies, as the case may be, at the date of any such failure, shall revert to the United States." (14 U. S. Stats. 239.)

The fourth section of the same act provides: "That whenever the said companies, or either of them, shall have twenty or more consecutive miles of any portion of said railroad and telegraph line ready for the service contemplated by this act, the President of the United States shall appoint three commissioners, whose compensation shall be paid by said company, to examine the same, and if it shall appear that twenty consecutive miles of railroad and telegraph shall have been completed and equipped in all respects as required by this act, the said commissioners shall so report

under oath to the President of the United States, and *thereupon* patents shall issue to said companies, or either of them, as the case may be, for the lands hereinbefore granted, to the extent of, and coterminous with the completed section of said railroad and telegraph line as aforesaid; and from time to time, whenever twenty or more consecutive miles of the said road and telegraph shall be completed and equipped as aforesaid, patents shall in like manner issue upon the report of the said commissioners, and so on until the entire railroad and telegraph authorized by this act shall have been constructed, and the patents of the lands herein granted shall have been issued."

The grant of these lands is made in the second section of said act in the following language:

"That there be, and hereby is, granted to the said companies, their successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line, etc., * * * every alternate section of public land, not mineral, designated by odd numbers, etc.; * * * and when any of said alternate sections or parts of sections shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, other lands designated as aforesaid, shall be selected by said companies in lieu thereof, under the direction of the Secretary of the Interior," etc.

The twelfth section provides:

"That Congress may at any time, having due regard for the rights of said California and Oregon Railroad Companies, add to, alter, amend or repeal this act."

On the next day after its passage, Congress added to it as follows:

"That whenever in any grant of land or other subsidies made or hereafter to be made to railroads or other corporations, the United States has reserved the right, or shall reserve it, to appoint directors, engineers, commissioners or other agents, to examine said roads, or act in conjunction with other officers of said company or companies, all the costs, charges and pay of said directors, engineers, commissioners or agents, shall be paid by the respective com-

panies. Said directors, engineers, commissioners or agents, shall be paid for said services the sum of ten dollars per day for each and every day actually and necessarily employed, and ten cents per mile for each and every mile actually and necessarily traveled in discharging the duties required of them; which per diem and mileage shall be in full compensation for said services. And in case any company shall refuse or neglect to make such payments, no more patents for lands or other subsidies shall be issued to said company until these requirements are complied with." (14 U. S. Statutes, 299, Sec. 21.)

From these several provisions it is apparent that the United States retains an interest in these lands, and a right to control the disposal of them, until after a patent has issued, and that until then these land are not subject to State taxation. (*Railway Company* v. *Prescott*, 16 Wallace, 603.)

*John L. Love and A. L. Hart*, for the Respondent.

The complaint does not allege that there are any unfulfilled conditions attached to the grant. If there are any such conditions they should have been averred. (*O'Connor* v. *Dingley*, 26 Cal. 11.) The patent having issued, the presumption is, that the plaintiff has complied with all the conditions. If the plaintiffs' right to the patent had become absolute when the assessment was made, the land was subject to taxation even if the patent had not been issued. (*Railway Company* v. *Prescott*, 16 Wallace, 603.)

By the Court:

The lands mentioned in the complaint were assessed for the purposes of taxation, in the year 1874. The patent for said lands was issued to the plaintiff on the 17th day of March, 1875. The twenty-first section of the act of Congress of July 27, 1866 (14 U. S. Stats. at Large, 299), provides that whenever in any grant of land, made or hereafter to be made, the United States has reserved the right to appoint commissioners to examine the roads, the costs, charges and pay of such commissioners shall be paid by the respective companies; and that in case any company shall refuse or

neglect to make such payments, no more patents for lands shall be issued to such company until such payments are made. The act of Congress of July 25, 1866 (14 U. S. Stats. at Large, 239), under which the plaintiff claims title, provides, in the fourth section, for the appointment of commissioners to examine the railroad and report its condition to the President of the United States. It is not alleged in the complaint that such commissioners had been appointed, or that payment for the services of the commissioners had been made when the lands were assessed, or the taxes levied.

The question presented is whether the lands were at that time subject to taxation by the State.

A similar question was considered in *Railway Company* v. *Prescott* (1G Wall. 604). It was provided by the act granting the lands involved in that case, that before any of the lands granted should be conveyed to the company, the cost of surveying, selecting and conveying said lands should first be paid by the company into the Treasury of the United States. It was admitted that such costs had not been paid by the company at the time the lands were assessed to the company, and it was held that the lands were not subject to State taxation. The doctrine of that case is decisive of the question here presented, if the commissioners had not been appointed, or payment for their services had not been made before the lands were assessed.

It is contended, on behalf of the defendant, that in the absence of any allegation in the complaint in respect to the payment for the services of the commissioners, it is to be presumed that such payment was made before the lands were assessed. But that position is not tenable. The issuing of the patent does not raise the presumption that the payment was made at any particular time, but if the time of the payment is material it must be expressly alleged. As it does not appear that the plaintiff was entitled to a patent for the lands when they were assessed, we are compelled to hold that they were not subject to taxation by the State.

Judgment reversed and cause remanded with directions to overrule the demurrer to the complaint.