THE CEDAR RAPIDS & Mo. R. R. Co. ET AL. v. THE COUNTY OF SAC ET AL.

1. **Taxation:** PUBLIC LANDS: RAILROAD GRANT. The lands selected in Sac county in pursuance of the grant to the State of Iowa under the act of May 15, 1856, and by the State conferred conditionally upon the Cedar Rapids & Missouri River Railroad Company, had not become subject to taxation on the first day of January, 1867.

> *Argument 1.* The road had not at that time been completed as far as the west line of Sac county in the manner required by the terms of the act.

> *Argument 2.* Under the method of selection of the lands adopted by the company, by which it commenced at the Mississippi river and took the lands clean as the road progressed westward, it could not select in advance of the construction, and could only take those which were co-terminous with the sections built.

> *Argument 3.* The fact that the road should have been constructed and the lands earned prior to January 1, 1867, does not estop the company to deny that they were taxable, because the State, which alone had the right to take advantage of the default, waived it.

*Appeal from Sac District Court.*

WEDNESDAY, JUNE 13.

ACTION in equity to restrain the collection of taxes levied for the year 1867, upon certain lands in the county of Sac. The lands formerly belonged to the plaintiff, The Cedar Rapids & Missouri River R. Company, and have now been conveyed to the plaintiff, The Iowa Railroad Land Company. The plaintiffs claim that the lands are not liable for the taxes of that year, for the reason that they belonged to the State of Iowa until after the first day of January of that year.

The defendants deny that they belonged to the State of Iowa until after the first day of January of that year, and aver that the first named plaintiff was the equitable owner thereof. By way of cross-petition they aver that they were subject also to taxation for the year 1866, and that they have been assessed for that year, and the defendants pray that the plaintiffs be directed to pay the taxes of 1866 as well as the taxes of 1867. Other facts are stated in the opinion. The court dismissed both the petition and cross-petition. Both parties appeal, the plaintiffs perfecting their appeal first.

*I. N. Kidder* and *E. S. Bailey*, for appellants.

*E. R. Duffie* and *Grant & Smith*, for appellees.

ADAMS, J.—The lands in question and other lands were granted to the State of Iowa by act of Congress, approved May 15, 1856, entitled "An act making a grant of lands to the State of Iowa in alternate sections, to aid in the construction of certain railroads in said State." The act, among other things, provides as follows:

"Section 4. And be it further enacted, that the lands hereby granted to said State shall be disposed of by said State only in the manner following: that is to say, that a quantity of land not exceeding one hundred and twenty sections for each of said roads, and included in a continuous length of twenty miles of each of said roads, may be sold; and when the governor of said State shall certify to the Secretary of the Interior that any twenty continuous miles of said road is completed, then another quantity of land hereby granted, not to exceed one hundred and twenty sections for each of said roads having twenty continuous miles completed as aforesaid, and included within a continuous length of twenty miles of each of such roads, may be sold, and so from time to time until the roads are completed."

In March, 1860, the legislature of Iowa conferred the lands in question conditionally upon the first named plaintiff. The act conferring them provided that the company would become entitled to them as the work progressed, that is, when the company had completed each section of twenty miles of road it should be entitled to the amount of land apportioned thereto. It also provided that the road should be completed and finished in a style and quality equal to the average of other first class western roads.

It is claimed by the appellants that not enough of the road had been finished in that style on the first day of January, 1867, to entitle the company to the lands in question, and that the company, therefore, was not even the equitable owner of them on that day.

1. TAXATION: public lands: railroad grant.

The road was commenced at its eastern terminus and built westward. Before the first day of January, 1867, the road was in operation to Denison, which is west of the west line of Sac county. If the road on that day was completed in the style required by the act, that is, in a style equal to the average of first class western roads, then it would appear that the lands contained in the grant east of the west line of Sac county might be considered as earned. The first question to be determined is: was the road completed in that style? On this point considerable testimony was taken, and, without discussing it in detail, it is sufficient to say that it satisfies us that the road was inferior to the average of first class western roads. A large amount of work remained to be done. One Denison, to be sure, testifies that the road was equal to a first class western road, but he shows that his knowledge of western roads was derived merely from traveling over them as a passenger.

It is claimed, however, by the appellees, that the company had completed in a first class manner at least sixty miles, as early as 1864, and by reason thereof had become entitled to 230,400 acres, and that to obtain that amount if the lands were taken clean from the east end of the grant a portion of the lands in Sac county would be required. The appellees, therefore, consider it as demonstrated that a part of the lands in Sac county became subject to taxation, and that the equitable relief sought by the plaintiffs must be withheld until they have furnished the evidence upon which a proper decree can be based.

But we think that in respect to the first sixty miles it may be said that the lands in Sac county were not selected for the building of that portion of the road. To show that they were selected, the appellees refer to the testimony of one Walker, who testified as follows:

"We claimed title immediately after getting the governor's certificate in October, 1864, to the lands for sixty miles of the road. We selected 230,000 acres for this sixty miles, taking them clean from the Mississippi river westward." But we are of the opinion that the company could not acquire the

lands thus selected, except so much as was co-terminous with the said sixty miles, and that the selection thus made must be treated as a nullity except for the said sixty miles. Whether the company could have selected the lands in Sac county, if it had not exhausted its power of selection before reaching that county, we need not determine. In *C. R. & M. R. R. Co. v. Carroll County*, 41 Iowa, 153, the court was equally divided upon the question as to whether the company was confined in its selections to lands co-terminous with the constructed part of the road; but there is no doubt that for the building of a section of twenty miles the lands selected must be embraced within a continuous twenty miles somewhere. Now if the company commenced at the Mississippi river, and its power of selection was exhausted in sixty miles, it is evident that it did not reach Sac county.

The next three sections, to-wit: the second sixty miles, were completed in March, 1866. The road thus *built* did not reach the east line of Sac county. No land in that county then became the property of the company, unless the company had the right to select from lands other than those co-terminous with the constructed part of the road, and unless also it did make such selection. If no selection was made of lands other than those co-terminous with the constructed part, the company became entitled to such lands in one county no more than in another, and if such lands in advance of selection became subject to taxation in one county they did in all. What then is the evidence as to the selection of such lands for the said second sixty miles? Upon this point the said Walker and one Clark, who were the active agents and officers of the company, were the only witnesses examined, and they disclaim all knowledge of such selection. It does not appear, therefore, to be proven that any such selection was made. And from the manner in which the company selected what it did select, and from the manner in which it attempted to select what it had not yet earned, we think that we must hold that the selections were for the building of each section of the road from the lands co-terminous therewith. The method adopted was to commence at the Mississippi river and take

the lands clean. By that method they could acquire no lands further west than the road was completed in the style required. And as the road between the western terminous of the sixth section and Denison does not appear to have been completed in the style required on the first day of January, 1867, we think that the lands in Sac county had not then been earned.

It is contended by the appellees that, even if the lands were not earned, the appellants should be regarded as estopped from setting up such fact. In the first place it is said that they claimed to own at least a part of them; and in the next place it is said that by the terms of the grant the road should have been wholly completed, and that the appellants should not be allowed to aver their own fault to deprive the county of the revenue which but for such fault it would certainly have received.

As to the claim, if any was made, its invalidity must be presumed to have been known to the county officers, and they cannot properly say that the assessment was made upon the strength of it. The claim as a representation was no more than a statement that by law the appellants were entitled to the lands. Where the representation is a statement of a matter of law, no estoppel ordinarily can be grounded upon it. *Mattoon v. Young*, 45 N. Y., 696.

As to the provisions of the grant respecting the completion of the road, we think it sufficient to say that the county was not a party to it. If the grantor saw fit to waive the company's default, the rights of the company must be regarded as unaffected by it. A waiver would have the same effect as an extension of time granted in advance. It is claimed indeed, by appellants, that such extension was granted. Certain it is no default was insisted on. The title to the land passed. The only question is as to when it passed.

Until the company became at least the equitable owner the lands were not subject to taxation, and we see nothing in the company's delay which should prevent them from dating the equitable ownership from the time it actually commenced.

We think that the decree of the District Court must be affirmed upon the defendants' appeal, and upon the plaintiffs'

·Reversed.