# Sullivan *v.* Van Kirk Land & Construction Co.

*Bill to Settle Title to Land, and for Injunction.*

1. *Land grants by the United States to this State; effect of.*—The Mobile and Girard Railroad Company never acquired any title, legal or equitable, to any of the lands which were granted to the State of Alabama by the act of Congress of June 3, 1856, "to aid in the construction of certain railroads in said State," which do not lie opposite to any portion of the Mobile & Girard Railroad completed within the time prescribed by said granting act. The title to all such granted lands which are not so situated was in the State of Alabama held by the State in trust for the United States.

[Sullivan v. Van Kirk Land & Construction Co.]

2. *Tax sales; of certain lands void.*—While the title to lands which passed to the State of Alabama in trust under the provisions ..of the Act of Congress of June 3, 1856, remained in the State, they were not subject to taxation, and all tax sales of such lands and tax deeds to the purchasers at such sales were void, conferring no title to them upon the purchasers or their vendees.

3. *Joint resolutison of legislature; how construed.*—No act or resolution of the legislature of the State could convey to the ·railroad companies any greater power or interest than the State itself had; and, hence, the joint resolution of the General Assembly, approved January 30, 1858, by which it was declared that "the lands are hereby disposed of, granted to and conferred upon the railroad particularly designated," must be construed in connection with the act of Congress.

4. *Certain lands; conveyed under act of Congress.*—Under the Act of Congress of the 29th September, 1890, "to forfeit certain lands heretofore granted for the purpose of aiding in the construction of railroads and for other purposes," by the eighth section of which it is provided "that the Mobile & Girard Railriad Company of Alabama shall be entitled to the quantity of land earned by the construction of its road from Girard to ·Troy," the title to all the lands which the Secretary of the Interior allotted to the Van Kirk Land & Construction Company as the purchasers from the Mobile & Girard Railroad· Company and to the purchasers therefrom were conveyed to the Van Kirk Company and its vendees.

5. *Tax sale; passed no title in certain cases.*—But no title passed by said Act of Congress of September 29th, 1890, to any purchaser of any of said lands, either earned or unearned by the railroad company, by any tax sale or deed made thereunder; for the doctrine of relation cannot be invoked to burden the holder of a title, and require him in violation of justice to pay taxes when he held neither the equity nor title to the lands. To invoke this doctrine there must be priority of estate between the parties; and the holder of a tax title is not a privy in estate with the holder of the fee.

APPEAL from Montgomery Chancery Court.

Heard before Hon. JERE N. WILLIAMS.

Martin H. Sullivan brought this bill against the Van Kirk Land & Construction Company and others, under the act of the legislature, "to compel the determination of claims to real estate in certain cases, and to quiet the title to the same." The defendants, Morris Adler and W. H. Knowles, answered by plea. The plaintiff claimed title to the lands in controversy by certain tax deeds

executed to purchasers at tax sales of the lands as the property of the Mobile & Girard Railroad Company. The defendants set up as their title that the Mobile & Girard Railroad Company executed a quit claim deed to the Van Kirk Land & Construction Company; that the latter company executed a mortgage on the lands; that this mortgage was foreclosed and the lands sold under the decree of foreclosure; and that the defendant, Adler, became the purchaser at such sale, and the defendant, Knowles, holds under him. These defendants further alleged that under an act of congress conferring the authority, the Secretary of the Interior of the United States certified the lands to the Van Kirk Land & Construction Company, thus conveying title to the company, which passed to the defendants by virtue of the foreclosure sale. The main question was whether or not the lands were subject to taxation as the property of the Mobile & Girard Railroad Company, and this question was determined in the negative by the chancellor in his ruling on exceptions to the answer of the defendants. The case is fully stated in the opinion.

Thos. H. Watts, for appellant, contended that the lands in question were subject to taxation, such title to them having passed out of the United States as would confer power on the State of Alabama to dispose of them, and make them taxable in the hands of those holding under the State.—*Carroll v. Safford*, 3 How. 441; *Crawley v. Johnson*, 21 Fed. Rep. 495; *Sims v. Irvine*, 3 Dallas 456; *Penn v. Klyne*, 1 Wash. 207; *Levi v. Thompson*, 4 How. 16; *Wirth v. Branson*, 98 U. S. 118; *Moore v. Robbins*, 96 U. S. 538; *Fletcher v. Pool*, 20 Ark. 100; *Tubbs v. Wilhoit*, 138 U. S. 146; *Rutherford v. Greene*, 2 Wheaton 186. (2). The United States alone could object that the title to the lands had been forfeited. *Grinnel v. Chicago*, 103 U. S. 739; *Vicksburg v. Elmore*, 15 S. R. 705.

II. C. Tompkins and John P. Tillman, *contra*, contended that the State held the title to the lands, and they were not subject to taxation.—*Farnworth v. M. & P. R. R. Co.*, 92 U. S. 49; *Swan & Billups v. Lawmore*, 70 Ala. 555; *Swan & Billups v. State*, 77 Ala. 545; *Railway Co. v. McShane*, 22 Wall. 444; *Central Pac. Ry. Co.*

*v. Howard*, 51 Cal. 229; *Wisconsin Cen. Ry. Co. v. Taylor Co.*, 46 Iowa 243; *Grant v. Iowa Ry. Land Co.*, 54 Iowa 673; *Ill. Cen. Ry. Co. v. Goodwin*, 94 Ill. 262; *Donavan v. Klake*, 6 Neb. 124.

(2). Congress has the right by act to forfeit title already vested; and no express provision for forfeiture is required.—*Atlan. & Pac. R. R. Co. v. Mingers*, 165 U. S. 413; *Stanley v. Colt*, 5 Wall. 119; *Mead v. Bullard*, 7 Wall. 290.

TYSON, J.—It is unnecessary to enter into any discussion of the provisions of the statutes under which the bill in this cause was filed, since, at a former term of this court, in this same case, an extended review was had of the purposes of the statute and the sufficiency of the allegations of the bill.—*Adler et al. v. Sullivan*, 115 Ala. 582. In accordance with the opinion the respondents Adler and others have filed their plea, setting up their claim, interest and title to the lands in controversy. It is from a decree sustaining the sufficiency of their plea, that the complainant prosecutes this appeal.

The case as made by the bill may be stated briefly to be this: That the Mobile & Girard Railroad Company, a corporation organized for the purpose of constructing a railroad from Girard to Mobile, Alabama, was one of the beneficiaries under the act of Congress approved June 3, 1856, "granting public lands, in alternate sections, to the State of Alabama to aid in the construction of certain railroads in said State," upon certain conditions therein named, and the act of the general assembly of Alabama, approved February 1, 1858, accepting the grant upon the terms, conditions and restrictions named in said act of Congress. It is alleged that this railroad company went into possession of the lands, including those in this controversy, prior to 1872, selling and conveying parts and parcels of said lands to various persons, after executing the bond as required by the act of February 1, 1858. That the railroad company failed to construct the entire line of road from Girard to Mobile within the time prescribed by the act of June 3, 1856, but only constructed eighty-four miles of it, to-wit, from Girard to Troy, Ala. While said railroad company was in possession of the lands, claiming to own

and hold them as its own, the lands became and were subject to taxation; that the railroad company listed and returned them for taxation and after having duly assessed them, and failing to pay the taxes, the lands were sold for taxes prior to the year 1885 and purchased by various parties, who received certificates of purchase. "Said lands not having been redeemed within the time allowed by law, the several judges of probate in the several counties executed deeds to the purchasers holding said certificates for said lands, and more than five years prior to the filing of this bill, your orator acquired such tax titles to all of said lands herein described and claims said lands as the grantee of the purchasers thereof by deeds executed to him * * * and (for) more than five years before the filing of this bill your orator and those under whom he claims, took possession of said lands under and by virtue of said tax titles and have continuously held possession of said lands under said tax titles to the present time."

The plea denies the acquisition of any title by the complainant under the tax sales; and avers in effect that the lands were not subject to taxation for the reason that the railroad company had never complied with the provisions of the act of Congress and therefore had neither the legal nor equitable title to the lands. The facts averred are, that the railroad company failed to construct the entire line of road from Girard to Mobile, Alabama, within the ten years prescribed in the act of Congress of June 3, 1856. That in the year 1869 the company had constructed only about seventy miles of its road, and in 1870 or 1871 completed it no further than Troy, the whole distance covered by the construction being only eighty-four miles. That the lands in controversy are situated in the counties of Escambia and Monroe in this State, and not opposite to any portion of the road completed by the railrad company, but are situated many miles, to-wit, from fifteen to forty miles from and southwest of said city of Troy and are opposite that part of the surveyed and fixed line of said railroad which has never been completed, and that none of these lands have ever been disposed of by the State of Alabama by sale or otherwise, as provided in the said act of Congress approved June 3, 1856.

The claim or titles asserted by the respondents in

their plea is derived through a quit-claim deed executed by the Mobile & Girard Railroad Co. to the Van Kirk Land & Construction Company; a deed executed by the register in chancery of Escambia county to respondent Adler as purchaser at a sale made in pursuance of a decree of foreclosure of a mortgage containing covenants of warranty executed by the Van Kirk Land & Construction Company to Worthington, Elliott and DeBardelaben; the certificate of Lamereaux, Commissioner, allotting these lands to the Van Kirk Land & Construction Company under the provisions of the act of Congress, approved September 29, 1890, entitled "An act to forfeit certain lands heretofore granted for the purpose of aiding in the construction of railroads and for other purposes."

We have stated so much of the bill and plea as is necessary to present the questions here involved. We deem it unnecessary to set out the averments of each with any more particularity.

If it be true as contended by the appellant that the lands were subject to taxation, then unquestionably his title is superior to the title or claim of the respondents. A determination of this question must of necessity depend upon the effect of the grant to the State of Alabama and the acceptance of the grant by the State, which involves a construction of the act of Congress of June 3rd, 1856, and the act of the general assembly of the State of Alabama of February 1, 1858. This act of Congress and similar acts of the general assembly of Alabama, have been the subject of adjudication by this court. It would seem that there should not now be any doubt as to the nature of the grant and the character of the title held by the State or the railroad company. Among the first cases, if not the first, in which the act of Congress of June 3, 1856, and a resolution adopted by the general assembly of Alabama, approved January 30, 1858, embodying substantially the same language as the act of February 1, 1858, was construed, was the case of *Swan & Billups v. Lindsey*, reported in 70 Ala. 507. An epitome of the opinion is clearly stated in the headnotes to be as follows:

"1. Under the provisions of the act of Congress approved June 3rd, 1856, 'granting public lands in alter-

nate sections to the State of Alabama, to aid in the construction of certain railroads' (11 U. S. Statutes at Large, p. 17), and the subsequent act of April 10th, 1869, renewing said grant (16 *Ib.* 45), a present title to the lands passed to the State, subject to be devested, by proper action taken, for breach of the condition subsequent annexed to the grant; and though this title did not attach to any specific sections of land, until the route of the particular railroad, to aid in the construction of which the grant was made, was definitely located within the time allowed by said acts of Congress, no title remained in the United States subject to entry or sale.

"2. Under said acts of Congress; the State held the lands so granted in trust for the purposes specified, limited by the restrictions and conditions expressed in the grant; having absolute power to sell one hundred and twenty sections, within a continuous length of twenty miles of the road, before any work was done on it, and the further power to sell, as the work progressed, the same number of additional sections, within other twenty continuous miles, on the Governor's certificate to the Secretary of the Interior that such twenty continuous miles of the road were completed; and when any of the lands were sold and conveyed in pursuance of these powers, the purchaser acquired an absolute title, whether the railroad was ever completed or not.

"3. Beyond the first one hundred and twenty sections, as to which an absolute power of sale was given, the State had no authority to sell or dispose of any of these lands, even to the railroad company itself, except in portions of twenty miles as the road progressed, and could not convey to its grantee or appointee any greater power or interest than was vested in itself. The joint resolutions of the General Assembly, approved January 30th, 1858, by which it was declared that the lands 'are hereby disposed of, granted to, and conferred upon' the railroad particularly designated, 'to be used and applied by said company upon the terms, conditions and restrictions in said act of Congress contained,' although strong words of grant and disposition are used, 'which would, ordinarily, convey all the title to the grantor,' must be construed in connection with the act of Congress, and do not convey to the railroad company any greater

power or interest than the State itself had; and notwithstanding these joint resolutions, the legal title to said lands, beyond the first one hundred and twenty sections, remained in the State until the railroad was completed." See also *Swan & Billups v. Larmore*, 70 Ala. 555; *McCarver v. Herzberg*, 25 So. Rep. 3; *Adler v. Prestwood & Knowles*, in MS.

In *Farnsworth et al. v. Min. & Poc. R. R. Co.*, 92 U. S. 49-65, the Supreme Court, speaking of a grant like the one under consideration said: "The act of Congress, granting lands to the Territory of Minnesota, imposed conditions upon their alienation, except as to the first one hundred and twenty sections, which the territory could not disregard. It declared, that the lands should be exclusively applied to the construction of the road in aid of which they were granted and to no other purpose whatever and should be disposed of only as the work progressed. It provided that their sale should be made in parcels, as specified portions of the road were completed, and only in that manner. The evident intention of Congress was to secure the proceeds of the lands for the work designated and to prevent any alienation in advance of the construction of the road, with the exception of the first one hundred and twenty sections. The act made the construction of portions of the road a condition precedent to a conveyance of any other parcel by the State. No conveyance, in disregard of this condition, could pass any title to the company."

In *Swann & Billups v. Miller*, 82 Ala. 530, Justice Somerville, speaking for the court, in construing section 4 of said act of Congress, used the following language: "It is shown by the record, that the lands in controversy were not embraced in the first one hundred and twenty sections which were authorized to be sold in order to construct the first twenty miles of the Alabama and Chattanooga road, which succeeded to the rights accorded to two of the roads mentioned in the original grant. The only remaining inquiry then is, whether the power of sale, conceding it to have been executed under the authority of this corporation, was in accordance with the provisions of section 4 of the act of June 3rd, 1856, as renewed by the act of April 10th, 1869; for, as said by the United States Supreme Court in *Schulen-*

*berg r. Harriman,* 21 Wall. 44, 59, where an act substantially similar was construed, 'no conveyance in violation of the terms of those acts, the road not having been constructed, could pass any title.' Section 4 of this act reads as follows: 'That the lands hereby granted to said State shall be disposed of by said State *only in the manner following,* that is to say: that a quantity of land, not exceeding one hundred and twenty sections for each of said roads, and included in a continuous length of twenty miles of each of said roads, may be sold; and *when the Governor of said State shall certify to the Secretary of the Interior* that any twenty continuous miles of any of said roads in completed, *then* another quantity of land, hereby granted, not to exceed one hundred and twenty sections for each of said roads having twenty continuous miles completed as aforesaid, and included within a length of twenty miles of each of said roads, *may be sold; and so, from time to time, until said roads are completed;* and if any of said roads is not completed within ten years, no further sale shall be made, and the lands *unsold* shall revert to the United States.' * * * It was, of course, beyond the power of the legis lature to infringe the provisions of this law. * * * After the sale of the first one hundred and twenty sec tions, the effect of this section, taken in connection with section 1 of the same act, was, as said by the United States Supreme Court, in *Schulenberg v. Harriman,* 21 Wall. 59, to make it a 'condition precedent to the conveyance by the State of any other lands, that the road should be constructed in sections of not less than twenty consecutive miles.' " Continuing, Justice Somerville said: "The State itself being thus prohibited, by the terms of the act, from making the sales at the time they were made, the railroad company, and all other persons acting under its authority, were equally prohibited from doing the same thing. It can scarcely be contended, that a sale made in contravention of the letter and policy of the law is merely voidable. It cannot be other than void *ab initio.* * * * The act of Congress conferring title to these lands was not a mere grant. It was a law as well."

It is not insisted by appellant's counsel that the lands in controversy are situated within the limits prescribed by the granting act of that portion of the road con-

structed between Girard and Troy, nor that they lie opposite to any portion of the road completed within the time prescribed by said granting act. This being true, the title to said lands was in the State of Alabama, held by said State in trust for the United States; and the railroad company never acquired any title to them, either legal or equitable, under the act of Congress of June 3, 1856, and the act of the general assembly of February 8, 1858.

The railroad having never acquired any interest in them and the title being in the State of Alabama for the use of the United States, the assessment of them for taxes prior to 1885, by the railroad company, was void and the sale which followed was void, conferring no title to them upon the purchasers or their vendee, this appellant.—*Swann & Billups v. The State*, 77 Ala. 545; *Railway Co. v. Prestcott*, 16 Wall. 603; *Railway Co. v. McShane*, 22 Wall. 444; *Wisconsin Central Railroad Co. v. Price County*, 133 U. S. 496; *Central Pacific Railroad Co. v. Howard*, 51 Cal. 229; *The Cedar Rapids & Mo. R. R. Co. v. The County of Sac et al.*, 46 Iowa 243.

What we have said disposes of the title asserted by the appellant under the tax sales, and also the title or claims of the respondents in so far as they alone depend upon the conveyances made by the railroad company to their grantors. However, on the 29th of September, 1890, Congress passed an act entitled "An act to forfeit certain lands heretofore granted for the purpose of aiding in the construction of railroads and for other purposes" under which it is contended by appellees they acquired a perfect title.—U. S. Statutes at Large, 496-499. By the first section of this act the United States in express words "resumed the title" to these lands, thereby divesting the legal title out of the State of Alabama, and investing the United States with both the legal and equitable title to them.

By the eighth section it is provided, "that the Mobile & Girard Railroad Company of Alabama, shall be entitled to the quantity of land earned by the construction of its road from Girard to Troy, a distance of eighty-four miles. And the Secretary of the Interior in making settlement and certifying to or for the benefit of said company the lands earned thereby shall include therein

[Sullivan v. Van Kirk Land & Construction Co.]

all the lands sold, conveyed or otherwise disposed of by said company not to exceed the total amount earned by said company as aforesaid. And the title of the purchasers to all such lands are hereby confirmed so far as the United States are concerned."

In compliance with this provision, the Secretary of the Interior ascertained that the Mobile & Girard Railroad Company had sold, conveyed or otherwise disposed of "an amount of lands in excess of the amount earned" by said company, and upon an agreement being entered into by certain purchasers from the company claiming large quantities of lands to prorate the amount remaining after protecting the small purchasers from the company, he allotted to the Van Kirk Land & Construction Company the lands in controversy as the transferee or purchaser from the Mobile & Girard Railroad Company. It was not until this settlement was made, and the lands selected and set apart to the purchasers that they acquired any title. And it was only those who had purchased from the railroad company who came within the beneficial provisions of the act. It is manifest from a cursory reading of the act that it was not the intention of Congress to confer any benefits upon railroad companies which had forfeited their claims under the granting act. The confirmation was not of any grant to the railroad company, but of conveyances made by it to different purchasers; conveyances the railroad company had no authority to make, and by which no title, legal or equitable passed. The purpose was to protect, as far as possible, persons who had purchased lands from the company and not to renew or otherwise confer upon the railroad company any rights which it had forfeited. That Congress had the power to include in this confirmatory act of titles to purchasers, titles acquired by purchasers at tax sales may be conceded. But the question is not one of authority vested in Congress, but what in fact did Congress do. If it was the intention of Congress to confirm these illegal tax sales, it is passing strange that in naming the beneficiaries in the confirmatory clause, the language employed confines the benefits conferred upon only those to whom the company had *sold, conveyed* or otherwise disposed of lands. It was doubtless on account of the equity residing in these purchasers, having paid their money to the rail-

road company innocently believing that the company had the right to make conveyances to them of the title, that induced the enactment of this provision. No such equity supported the claim of the purchasers at tax sales.

It follows from what we have said, that there is no merit in the attempt of appellant to invoke the doctrine of relation to import validity to the illegal tax sale. This doctrine cannot be invoked to burden the holder of a title, and require him in violation of justice, to pay taxes when he held neither the equity nor title to the lands. Besides this doctrine, which is a fiction of law, rests upon the equitable rule that if a person make sale of lands having no title and afterwards acquire title, the afterwards acquired title enures to the benefit of his grantee. In other words there must be privity of estate between the parties. The holder of a tax title is not a privy in estate with the holder of the fee, his title is not derived from, but is antagonistic to the title of the owner.—*Hussmon v. Durham*, 165 U. S. 144; *Gibson v. Chouteau*, 13 Wall. 92; *Reynolds v. County of Plymouth*, 55 Ia. 90; *Crum v. Cotting*, 22 Iowa 411.

There was no error in overruling the exceptions to the respondents' plea, and the decree of the chancery court must be affirmed.

Affirmed.